967 F.2d 592
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
James J. BOUTROSS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Martin HARRIS, Defendant-Appellant.
 Nos. 91-50430, 91-50442.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 3, 1992.
Decided June 10, 1992.
 
 Before D.W. NELSON, BOOCHEVER and DAVID R. THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 James Boutross and Martin Harris appeal their jury convictions for making false statements in loan and credit applications, in violation of 18 U.S.C. § 1014. We affirm the convictions.
 
 I.
 
 3
 Boutross and Harris argue that the district judge's dismissal of juror Schoonover deprived them of their Sixth Amendment right to a unanimous jury. We review a district court's decision to excuse a juror under Fed.R.Crim.P. 23(b) for an abuse of discretion. United States v. Ross, 886 F.2d 264, 266-67 (9th Cir.1989), cert. denied, 494 U.S. 1083 (1990).
 
 
 4
 Under Rule 23(b), a court may exercise its discretion to excuse a juror for "just cause." Jurors are obligated to consider only the evidence which is presented to them in open court. Bayramoglu v. Estelle, 806 F.2d 880, 887 (9th Cir.1986). Hence, the existence of juror bias may constitute just cause for that juror's excusal. See generally id. at 888 (existence of juror bias may violate a defendant's Sixth Amendment right to a fair and impartial trial).
 
 
 5
 The record here indicates that there was just cause for the district court's dismissal of Schoonover. First, Schoonover believed she could not be an impartial juror. A note from the foreperson informed the court that Schoonover felt she could not "in clear conscience impartially decide this case." See R.T. at 3.[1] During her in camera interview, she confirmed that she could not "give an honest verdict," R.T. at 9, and that her prior experiences would cause her to, in effect, disregard the evidence. Cf. United States v. Baca, 494 F.2d 424, 429 (10th Cir.1974) (observing that when juror "unequivocally stated that she could no longer hear and decide the case fairly and impartially that the [district] Court had no recourse but to excuse her from further jury service.").
 
 
 6
 Second, this self-professed partiality or bias stemmed from Schoonover's belief that she had committed some of the acts for which Boutross and Harris were being tried. Initially, she pointed to a somewhat general reason for her lack of impartiality: "... I could not honestly, in my heart, being a business owner myself, give an honest verdict." R.T. at 9. Only after indicating, however, that she did not "want to say anything that will incriminate me," R.T. at 10, and being assured twice that her statements would not incriminate her, she told the court:
 
 
 7
 I just don't feel that I could put the rope around somebody's neck, they've been accused of doing things that I've done myself in my own business and I would not feel good about accusing someone of things that I have done myself and never been accused of.
 
 
 8
 R.T. at 15.
 
 
 9
 "A court must excuse a prospective juror if actual bias is discovered during voir dire." United States v. Allsup, 566 F.2d 68, 71 (9th Cir.1977). During voir dire, Schoonover apparently did not recognize from the initial description of the case that she had had business experiences similar to some of the conduct in evidence in the case. See R.T. at 20. Notwithstanding this belated recognition, we might be less convinced of just cause for her dismissal had she believed that she could remain fair and impartial. Cf. Bayramoglu, 806 F.2d at 887-88 (rejecting defendant's claim that one juror's misconduct tainted the entire jury's impartiality, in light of significant fact that jurors assured the court that they could disregard the misconduct). Here, however, there was more than the mere possibility that the juror's impartiality would be affected adversely by the similarity between her prior acts and the acts for which the defendants were accused: the juror unequivocally stated that she could not give an honest verdict. The district court, therefore, did not abuse its discretion in finding just cause to excuse Schoonover.
 
 
 10
 Citing United States v. Brown, 823 F.2d 591 (D.C.Cir.1987), however, defendants contend that other evidence indicated that Schoonover sought to be excused because she believed that the Government's evidence was insufficient. In light of this possibility, they argue that Schoonover's dismissal violated their Sixth Amendment right to a unanimous jury verdict. We disagree.
 
 
 11
 In Brown, a juror stated that he could not fulfill his duties as a juror, citing his disagreement with the RICO law and, later, with "the way the evidence has been presented." Id. at 594. The district court indicated that the juror's reasons for seeking relief from his juror duty were unclear. Deciding, however, that further inquiry would jeopardize the secrecy of the jury's deliberations, the court discharged the juror under Rule 23(b) on the basis that he would not follow the RICO law. Id. at 595. The D.C.Circuit reversed. Observing that the juror had also expressed doubts about the evidence, it held that "if the record evidence discloses any possibility that the request to discharge stems from the juror's view of the sufficiency of the government's evidence, the court must deny the request" for the juror's dismissal. Id. at 596.
 
 
 12
 As the Government points out, however, the facts in Brown differ significantly from the facts at bar. First, the juror's note in Brown appeared after five weeks of deliberations and after another note had suggested a jury deadlock. In contrast, Schoonover asked to be excused on the first day of jury deliberations, and repeatedly assured the district court that her request did not stem from disagreement with fellow jurors. No evidence in the record remotely suggests that the jury had deadlocked on any of the counts when Schoonover was dismissed--a situation which would have presented a much stronger case that the defendants' right to a unanimous verdict had been jeopardized. Cf. United States v. Hernandez, 862 F.2d 17, 22 (2d Cir.1988) (reversing conviction in part due to removal of sole hold-out for acquittal), cert. denied sub nom. Quinones v. United States, 489 U.S. 1032 (1989).
 
 
 13
 Second, the Brown record indicated "a substantial possibility" that the juror's discharge request stemmed from his belief that the Government's evidence was insufficient. Id. at 596. Here, the record indicated that Schoonover wished to be excused because she recognized that the defendants were being "accused of doing things that I've done myself in my own business." R.T. at 15. Examining the entirety of the Schoonover interview and the district court's discussions with counsel, we are satisfied that the record is clear that the problem was not that Schoonover considered the evidence and found it insufficient, but that her own prior experiences were causing her to "in effect disregard the evidence." R.T. at 15 (emphasis added). See, e.g., R.T. at 16 (Schoonover explaining that she would "feel like a hypocrite.").
 
 
 14
 In resolving issues of juror impartiality, we have long recognized that the trial judge is in the best position to evaluate the juror's testimony, credibility, and ability to fulfill her duty as a juror. See Ross, 886 F.2d at 267. Because the record does not present "even the slightest basis" to believe that Schoonover was excused on a pretext in order to reach a unanimous verdict, see United States v. Stratton, 779 F.2d 820, 832 (2d Cir.1985), cert. denied, 476 U.S. 1162, and 477 U.S. 906 (1986), we conclude that the district court did not abuse its discretion in finding just cause to dismiss Schoonover under Rule 23(b).
 
 II.
 
 15
 Defendants also argue that the procedures employed in excusing juror Schoonover violated their right to be present at every stage of the trial pursuant to Fed.R.Crim.P. 43(a). Rule 43(a) provides:
 
 
 16
 The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.
 
 
 17
 We find defendants' contention to be without merit. The record clearly indicates that upon learning about Schoonover's request to be excused, Judge Hupp first asked counsel how best to proceed, and that Mr. Newton, counsel for defendant Boutross, responded by proposing that the court voir dire the juror. Mr. James, counsel for defendant Harris, concurred.
 
 
 18
 Defendants nonetheless claim that their counsel "clearly anticipated ... that the court would report its findings to counsel before any decision was made, and certainly prior to the excusal and departure of the juror from the courthouse." Def.Br. at 44. Such a report, they argue, would have afforded them the opportunity to suggest further questions to Schoonover.
 
 
 19
 The record does not support these assertions. The district judge suggested that he would conduct an in camera interview of Schoonover and would report his conclusions to counsel, to minimize the possibility of improper disclosure of jury deliberations:
 
 
 20
 COURT: Do you--do you want to give it a thought for a minute?
 
 
 21
 NEWTON: Well, no, no. I--I think that the Court is handling it in an appropriate fashion with perhaps one caveat. Perhaps after you've had the interview with her, then perhaps you could send her back and your recorder could read to us the questions and the answers in the event that there might be a follow-up that we would want to suggest that the Court might put to her. That's the only--that's the only thing.
 
 
 22
 COURT: If--if I do that, I might as well have you in the room at the same time.
 
 
 23
 NEWTON: Your Honor--
 
 
 24
 COURT: What I'm concerned about is her inadvertently revealing a portion of the jury's deliberations.
 
 
 25
 NEWTON: Well, I, you know--
 
 
 26
 COURT: I do have in mind preserving the records in case I'm--if I make a bad judgment, you've--you've got a record on it.
 
 
 27
 NEWTON: All right.
 
 
 28
 COURT: But--
 
 
 29
 NEWTON: It puts you in the hot seat, Your Honor, but--
 
 
 30
 COURT: Yes, it does.
 
 
 31
 NEWTON: --I think--I agree--
 
 
 32
 .............................................................
 
 
 33
 ...................
 
 
 34
 * * *
 
 
 35
 JAMES: I concur on your procedure, Your Honor. I think that should be in chambers without counsel.
 
 
 36
 NEWTON: I agree.
 
 
 37
 R.T. at 5-6 (emphasis added).
 
 
 38
 The record demonstrates that defense counsel expressly agreed to their exclusion from the Schoonover interview, that they waived the opportunity to submit further questions to Schoonover, and that they recognized that Judge Hupp might be required to make a judgment regarding excusal on his own. Cf. Remmer v. United States, 347 U.S. 227, 228-30 (1954) (requiring hearing for all interested parties where defense counsel were completely unaware of the alleged jury tampering and the subsequent F.B.I. investigation of a juror). Such stipulation amounts to a waiver of the defendants' right to be present during the in-chambers interview of Schoonover and the decision to excuse her. See United States v. McClendon, 782 F.2d 785, 788-89 (9th Cir.1986) (defendants' failure to object to their exclusion from in-chambers voir dire of prospective jurors waived their right to be present under Rule 43(a)). Accordingly, we find that the defendants waived their right to be present when the court questioned Schoonover and decided to excuse her.
 
 
 39
 The convictions of Boutross and Harris are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 "R.T." refers to the Reporter's Transcript, April 25, 1991