**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Clarence D. ROSS, Defendant–Appellant.**

No. 87–3018.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 10, 1989.

Decided Sept. 26, 1989.

David Skeen, Port Townsend, Wash., for defendant-appellant.

Jerald E. Olson, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Before WRIGHT, NORRIS and BEEZER, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Clarence Ross challenges his conviction, contending that he was denied his right to an impartial jury and that the admission of evidence at trial was improper under Fed. R.Evid. 404(b). We affirm.

## I. BACKGROUND

Ross and his wife were charged with conspiracy to defraud the United States. 18 U.S.C. § 371. He alone was charged with four counts of making false statements to the Department of Labor, 18 U.S.C. § 1001, and two counts of improperly using his wife's social security number, 42 U.S.C. § 408(g)(2). During the trial in 1986, the court admitted evidence, over Ross's objection, that he had improperly used his wife's social security number in 1968.

After the jury was instructed on the fifth day of trial, it deliberated for one hour before being excused for the day. During the morning of the following day, the foreperson passed a note to the judge inquiring if the jury could return a verdict on some counts as it was deadlocked on others. The court ordered further deliberations. At 1:45 p.m. the foreperson passed a second note informing the judge that one juror was ill and wished to be excused.

The court convened, and that juror was brought into open court. There followed this colloquy:

COURT: Ms. Peters are you Juror No. One?

JUROR NO. ONE: Yes.

COURT: I have a note, "one of the jurors has become ill and has expressed a desire to be excused." Is that you?

JUROR NO. ONE: Yes.

COURT: Were you sick this morning?

JUROR NO. ONE: I was running a fever last night and this morning, but I just thought it was stress. I didn't know what was wrong with me.

COURT: Are you under a doctor's care?

JUROR NO. ONE: No.

COURT: You don't feel that you can continue?

JUROR NO. ONE: *At this point I don't think it would be fair to the defendant because I'm not—all I want to do is go home. I don't want to argue anymore. I just want to agree with anybody just so I can go home.*

COURT: Please go back to the jury room.

R.T. at 179–80 (emphasis added).

After the juror left the courtroom, the judge noted that "[s]he does appear that she's in distress. How serious, I don't know." He then brought the whole jury into the courtroom to determine the status of the deliberations. The foreperson stated that they had reached a verdict on some counts. When asked if further deliberations would be fruitful, the foreperson said "I'm concerned about the one juror who is ill and whether she can continue." The judge had the jury retire for further deliberations.

After the jury left the courtroom, the judge stated:

> What I intend to do is wait a few minutes. We'll see what happens. If she sends out another note, then I'm going to have to do something. But the next time I think under the rules I'll ask them the same thing and then accept whatever verdict they have. Then we'll go from there.

*Id.* at 182. The jury returned a guilty verdict on all charges at 3:45 p.m. that afternoon. Ross was sentenced to concurrent three year sentences on each count.

## II. DISCUSSION

### A. *Defendant's Right to an Impartial Jury*

Because defense counsel made no objection and moved neither for the juror's removal nor for a mistrial, we review the district court's treatment of the juror under the plain error standard. Fed.R. Crim.P. 52(b). The plain error rule "authorizes the Courts of Appeals to correct only 'particularly egregious errors,' those errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (citations omitted). Reversal is warranted only in exceptional circumstances "necessary to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process." *United States v. Bustillo,* 789 F.2d 1364, 1367 (9th Cir.1986).

■ This court generally defers to the district court in the management of juries. *See, e.g., United States v. Madrid,* 842 F.2d 1090, 1092 (9th Cir.) ("substantial weight" is accorded to the trial judge's conclusion regarding juror misconduct), *cert. denied,* —— U.S. ——, 109 S.Ct. 269, 102 L.Ed.2d 256 (1988); *United States v. Cawley,* 630 F.2d 1345, 1348 (9th Cir.1980) (according "great deference" to the trial judge's decision whether to declare a mistrial due to a deadlocked jury "because the trial judge is in the best position to assess the relevant facts").

In the context of ill jurors, we found no error when a district court refused to remove a sick juror after it "apprised itself of [her] condition and was convinced, and she agreed, that she could continue for the short additional time it would take to finish the case." *United States v. Armstrong,* 654 F.2d 1328, 1333 (9th Cir.1981), *cert. denied,* 454 U.S. 1157, 102 S.Ct. 1032, 71 L.Ed.2d 315 (1982). Our decision in *Armstrong* does not control the outcome in this case. This juror did not agree verbally to continue deliberating, nor did the judge make a finding that a verdict on all counts was imminent.

Ross argues that the judge should have exercised his discretion by declaring a mistrial or by dismissing the juror under Fed. R.Crim.P. 23(b) which provides:

> if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining 11 jurors.

Fed.R.Crim.P. 23(b); *see, e.g., United States v. Molinares Charris,* 822 F.2d 1213, 1223 (1st Cir.1987) (no abuse to discharge deliberating juror suffering from bad nerves); *United States v. Stratton,* 779 F.2d 820, 832 (2d Cir.1985) (noting that

the just cause standard of Fed.R.Crim.P. 23(b) encompasses temporary incapacitation, not just permanent or lengthy incapacitation), *cert. denied*, 476 U.S. 1162, 106 S.Ct. 2285, 90 L.Ed.2d 726 (1986). A court's discretion in applying Rule 23(b), however, is not unlimited. *See, e.g., United States v. Brown*, 823 F.2d 591, 596–97 (D.C.Cir.1987) (finding a Sixth Amendment violation for dismissing a juror during deliberations when the request for discharge stemmed from the juror's view of the sufficiency of the government's evidence).

■ The judge's decision not to discharge the juror or to declare a mistrial in this case is not plain error. Having observed the juror's testimony, demeanor and appearance, he was in the best position to determine whether the juror was actually too ill to serve. He could tell from his experience how to evaluate the jury's ability to deliberate further. Finally, he was in the best position to determine whether the failure by defense counsel, an experienced federal public defender, to request a mistrial or application of Rule 23(b) was a tactical decision. We cannot say that the judge's failure to discharge the juror or to declare a mistrial constitutes plain error.

■ Ross argues that the jury's verdict was inconsistent, and that this inconsistency demonstrates that there was coercion in the jury deliberations. The verdict was not inconsistent. The jury convicted him of one count of conspiracy with his wife, and six additional counts against him alone. The argument lacks merit.

## B. Fed.R.Evid. 404(b) Determination

Ross argues that the admission of evidence of a prior similar act was improper. He challenges the admission of evidence that he improperly used his wife's social security number in 1968, 13 years before the acts in this case. We review for an abuse of discretion. *United States v. Spillone*, 879 F.2d 514, 518 (9th Cir.1989).

■ Evidence is admissible under Rule 404(b) when: (1) there is sufficient proof for the jury to find the defendant committed the earlier act; (2) the other act was not too remote in time; (3) if used to prove intent, the prior act must be similar; (4) it must be used to prove a material issue; and (5) the probative value must outweigh prejudice. *Id.* at 518–20. In *Spillone*, this court refused to adopt a bright line rule regarding remoteness, holding that a conviction more than ten years earlier was not too remote. *Id.* at 519.

■ The court did not abuse its discretion. The evidence of the prior similar act was admitted to negate a claim of mistake by Ross and to show intent. Given the similarity of the offenses, the prior act was not so remote as to require exclusion.

Even if it was remote, the record reveals that any possible error was more likely than not harmless error. Fed.R.Crim.P. 52(a); *United States v. Owens*, 789 F.2d 750, 757 (9th Cir.1986), *rev'd on other grounds*, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988).

■ Ross argues that he must admit the earlier act before it can be admitted as evidence. This argument is without merit.

AFFIRMED.

BEEZER, Circuit Judge, concurring in part and dissenting in part.

I concur in parts I and IIB of the court's opinion. I respectfully dissent from part IIA.

Fed.R.Crim.P. 23(b) places the burden of excusing a juror for just cause upon the court, not upon counsel. Ms. Peters was candid with the district court when she said she could not be "fair to the defendant." The rule permits the court to excuse a juror, with or without the consent of counsel, and for the remaining jurors to deliberate to a verdict.

Ross was denied his right to be tried by an impartial jury. Ms. Peters plainly, clearly, and unequivocally stated that she was no longer a disinterested and impartial juror able to argue and cajole, stand firm or retreat as her conscience, the evidence, and the deliberative process demanded. She admitted that her only concern was "to agree with anybody just so I can go home." We have no way of knowing what effect, if

any, the illness of the juror may have had on her fellow jurors and their deliberative proceedings.

There is no case law which I have found which is remotely analogous to the issue raised in this appeal. The reason is clear—no juror so plainly admitting a lack of impartiality would be permitted to continue deliberating. The lack of impartiality was so patent that I see no room, in this case, for a district court to evaluate the juror's "testimony, demeanor and appearance" to determine whether the juror could continue to deliberate.

I have no doubt that the juror was not physically endangered by the further deliberations. Physical fitness to serve is not, however, the measure of impartiality. A jury's critical faculties are what breathes life into the term "deliberating jury." The juror's own statement indicates that her illness suspended her critical faculties, and, hence, her impartiality.

I cast no aspersion on the juror's conduct. She was at all times forthright with the court and merely did as she was told after she alerted the court to the effect of her illness on her ability to deliberate. Her conduct was honorable and to be commended.

The right to an impartial jury is at the very core of our criminal justice system. I believe that Ross was denied that right. It was the duty of the district court to assure that the defendant's conduct was measured by a totally impartial jury and the failure to discharge the ill juror was plain error. I would reverse and grant a new trial.