**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JERMAINE ALONZO MITCHELL,
*Defendant-Appellant.*

No. 08-10027

D.C. No.
CR-04-00010-ECR

OPINION

Appeal from the United States District Court
for the District of Nevada
Edward C. Reed, Senior District Judge, Presiding

Argued and Submitted
October 20, 2008—San Francisco, California

Filed June 23, 2009

Before: J. Clifford Wallace, Sidney R. Thomas and
Susan P. Graber, Circuit Judges.

Opinion by Judge Wallace;
Dissent by Judge Thomas

7499

## COUNSEL

Dennis A. Cameron, Reno, Nevada, for the defendant-appellant.

William R. Reed, Assistant United States Attorney, Reno, Nevada, for the plaintiff-appellee.

## OPINION

WALLACE, Senior Circuit Judge:

Mitchell appeals from his conviction and sentence for possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) (Count One), and possession of marijuana in violation of 21 U.S.C. § 844 (Count Two). On Count One, he was sentenced to a mandatory term of life imprisonment without release and ten years of supervised release. On Count Two, he was sentenced to a term of 90 days of imprisonment and three years of supervised release. The sentences of imprisonment are to run concurrently, as are the terms of supervised release. Although Mitchell raises a number of issues on appeal, in this opinion we deal with only his claim that he was denied his constitutional right to an impartial jury. We address his other arguments in a companion unpublished disposition. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this timely filed appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm.

## I.

During voir dire of prospective jurors at Mitchell's trial, the court engaged in the following sidebar colloquy with government attorney Fahami, defense counsel Edwards, and a prospective juror, whom we refer to here as Jane Doe:

> THE COURT: [Jane Doe], please, after we recess, you indicated to the courtroom deputy that you had some sort of — there was somebody in your family or some friend had had some sort of contact with illegal drugs, is that right?

PROSPECTIVE JUROR [JANE DOE]: Yes. My — it happened about nine, ten years ago in Mexico. One of my uncles was actually killed by a drug dealer.

THE COURT: Okay. How old were you then?

PROSPECTIVE JUROR [JANE DOE]: I'm 26.

THE COURT: Do you remember any of the circumstances involving —

PROSPECTIVE JUROR [JANE DOE]: I was actually here in the United States, and it happened down in Mexico. But, it was my mom's youngest brother.

THE COURT: All right. Do you think that what happened there would affect you, in any way, in being a fair juror in this case?

PROSPECTIVE JUROR [JANE DOE]: Um, I don't think so.

THE COURT: Well, you're going — is that the best you can do, or can you put that out of your mind?

PROSPECTIVE JUROR [JANE DOE]: Um, I think it would be on my mind, to tell you the truth — no, I'll be fine. No. Actually, I'm fine.

THE COURT: I need pretty direct assurance on this, if you think that would cause you a problem.

PROSPECTIVE JUROR [JANE DOE]: I think it will, now that I think about it. I didn't think about it

before. But now that it's in my mind, it's a little different, I think.

THE COURT: You think it would cause you a problem?

THE COURT: You have to whisper now.

PROSPECTIVE JUROR [JANE DOE]: Sorry. It didn't affect me —

THE COURT: You have to whisper.

PROSPECTIVE JUROR [JANE DOE]: It did affect my family, so I think, yes, it will affect me.

THE COURT: Okay. You may return to your seat.

(Side bar with the Court and counsel:)

THE COURT: Do counsel wish me to ask any additional questions of the juror? Ms. Fahami.

MS. FAHAMI: No, Your Honor.

THE COURT: Mr. Edwards.

MR. EDWARDS: No, Your Honor.

THE COURT: Do you wish — do counsel wish to challenge the juror?

MR. EDWARDS: No, Your Honor.

THE COURT: And on your side, Ms. Fahami?

MS. FAHAMI: No, Your Honor.

THE COURT: Neither counsel wishes to challenge for cause? Well, then we'll be able to proceed then. Otherwise, I was going to have to take a step back.

With [sic] those questions and the answers affect your challenge or waiver of your first peremptory, Ms. Fahami?

MS. FAHAMI: No, Your Honor.

THE COURT: All right. Thank you.

Jane Doe was seated as a juror. Three days later, the jury convicted Mitchell of both counts on which he had been indicted. On appeal, Mitchell argues that he was denied his constitutional right to an impartial jury because Jane Doe harbored impermissible bias.

## II.

Mitchell did not move to strike Jane Doe for cause during voir dire. Normally, where a defendant fails to raise a claim of error at trial, we will review that claim for plain error. Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention"); *United States v. Olano*, 507 U.S. 725, 731 (1993) (holding that Rule 52(b) "provides a court of appeals a limited power to correct errors that were forfeited because [they were] not timely raised in district court").

Plain error exists where (1) there is an "error," (2) that is "plain," and (3) the error affects "substantial rights." *Id.* at 732. An "error" is any "[d]eviation from a legal rule," and it is "plain" if it is "clear" or "obvious." *Id.* at 732-34. An error affects "substantial rights" if the defendant is prejudiced in such a manner as to "affect[ ] the outcome of the district court proceedings." *Id.* at 734-35. Even where these conditions

exist, a court of appeals on plain error review should reverse a conviction only where the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 736 (internal quotation marks omitted).

Our law is ambiguous if not in conflict as to whether this standard of review applies to unpreserved claims of juror bias. In *United States v. Olano*, 62 F.3d 1180, 1192-93 (9th Cir. 1995), we applied the plain error standard of review to a claim of juror bias where the defendant "did not move for mistrial" in the district court. Similarly, in *United States v. Mitchell*, we limited our review of a juror bias claim on appeal to plain error because the defendant "did not ask the [trial] court to excuse [the challenged juror] for cause." 502 F.3d 931, 955 (9th Cir. 2007), *cert. denied*, 128 S. Ct. 2902 (2008), citing *United States v. Mendoza-Reyes*, 331 F.3d 1119, 1121 (9th Cir. 2003) (per curiam), and *United States v. Ross*, 886 F.2d 264, 266 (9th Cir. 1989).

However, in *United States v. Sanchez-Cervantes*, 282 F.3d 664, 670 (9th Cir. 2002), we held that "[w]e only review for plain error or assess whether an error is harmless when the error is not structural." And in *Dyer v. Calderon*, 151 F.3d 970, 973 n.2 (9th Cir. 1998), this court en banc held that "the presence of a biased juror introduces a structural defect" into a criminal defendant's trial. *Cf. United States v. Hamilton*, 391 F.3d 1066, 1071 (9th Cir. 2004) (holding that a violation of the Sixth Amendment right to counsel at "critical stage[s]" of criminal proceedings is not subject to plain error analysis); *but see United States v. Brown*, 26 F.3d 1124, 1126 (D.C. Cir. 1994) (concluding that "plain error analysis is applicable to a sixth amendment claim not raised at trial").

These latter cases, apparently in conflict with earlier decisions, suggest that plain error review may not be appropriate for unpreserved claims of juror bias. However, these cases may also be read as merely circumscribing the scope of plain error review with respect to such claims so that a defendant

need not demonstrate that he was prejudiced by the presence of the challenged juror. *Dyer*, 151 F.3d at 973 n.2 ("The presence of a biased juror cannot be harmless; the error requires a new trial without a showing of actual prejudice"). We need not resolve this ambiguity or conflict in our jurisprudence, however, because even if plain error review does not apply, we conclude that there was no error in the district court's failure sua sponte to strike Jane Doe from the jury.

## III.

[1] The Sixth Amendment right to a jury trial guarantees the criminally accused a fair trial by a panel of impartial jurors. *Id.* at 973. Even if only one juror is unduly biased or prejudiced, the defendant is denied this constitutional guarantee. *Id.*; *see also United States v. Plache*, 913 F.2d 1375, 1377 (9th Cir. 1990) ("It is well-settled that a single partial juror deprives a defendant of his Sixth Amendment right to a trial by an impartial jury").

[2] In this case, Mitchell argues that he was denied his right to an impartial jury because the district court failed to strike Jane Doe as biased. To succeed on such a claim, a defendant usually bears the burden of demonstrating that the challenged juror was biased, and that the district court erred in failing to strike her from the jury. *United States v. Martinez-Martinez*, 369 F.3d 1076, 1081-82 (9th Cir. 2004), citing *United States v. Hursh*, 217 F.3d 761, 768 (9th Cir. 2000). However, where as here, no motion was made during jury selection to dismiss the juror in question for cause, Mitchell assumes a greater burden: he must show that the evidence of partiality before the district court was so indicative of impermissible juror bias that the court was obliged to strike Jane Doe from the jury, even though neither counsel made the request. *See, e.g.*, *Ross*, 886 F.2d at 266-67 (evaluating the sufficiency of the evidence before the district court in evaluating an unpreserved claim of juror bias); *cf. Sims v. Rowland*, 414 F.3d 1148, 1155-56 (9th Cir. 2005) (holding that due process does not require a trial

court to hold an evidentiary hearing sua sponte when presented with evidence of juror bias).

### A.

**[3]** "We have analyzed juror bias under two theories — actual bias and implied bias." *Estrada v. Scribner*, 512 F.3d 1227, 1240 (9th Cir.), *cert. denied*, 128 S. Ct. 2973 (2008). Actual bias is, in essence, " 'bias in fact' — the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *United States v. Gonzalez*, 214 F.3d 1109, 1112 (9th Cir. 2000), quoting *United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997). Actual bias is found where "a prospective juror states that he can not be impartial, or expresses a view adverse to one party's position and responds equivocally as to whether he could be fair and impartial despite that view." *Fields v. Brown*, 503 F.3d 755, 767 (9th Cir. 2007) (en banc).

**[4]** Implied bias is "bias conclusively presumed as a matter of law." *Gonzalez*, 214 F.3d at 1111, quoting 47 Am. Jur. 2d Jury § 266 (1995). The inquiry here is "whether an average person in the position of the juror in controversy would be prejudiced." *Id.* at 1112, quoting *United States v. Cerrato-Reyes*, 176 F.3d 1253, 1260-61 (10th Cir. 1999) (emphases and internal quotation marks omitted). Thus, we have presumed a challenged juror's bias "where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." *Tinsley v. Borg*, 895 F.2d 520, 527 (9th Cir. 1990), quoting *Person v. Miller*, 854 F.2d 656, 664 (4th Cir. 1988). We have cautioned, however, that bias should be presumed only in "extreme" or "extraordinary" cases. *Tinsley*, 895 F.2d at 527, quoting *Smith v. Phillips*, 455 U.S. 209, 222, 223 n.* (1982) (O'Connor, J., concurring); *see also Fields*, 503 F.3d at 770 (holding that bias should be presumed only in "extreme situations").

In *Gonzalez*, we applied these standards to conclude that a juror serving in a narcotics trial displayed impermissible bias where:

> [the juror] disclosed the fact that her ex-husband, the father of her daughter, dealt and used cocaine — the same drug and conduct at issue here. Moreover, she described her former husband's drug dealing as one of the reasons for her relatively recent divorce and the break-up of her family. She admitted that the experience was painful. Asked three times whether she could put that experience aside and serve fairly and impartially, she never affirmatively stated that she could. Instead, she equivocated each time.

214 F.3d at 1113. We held that the juror's equivocal statements regarding her ability to be impartial, coupled with "the similarity between her traumatic familial experience and the defendant's alleged conduct," warranted reversal of the defendant's conviction "under either an express or implied bias theory." *Id.* at 1114; *see also United States v. Eubanks*, 591 F.2d 513, 517 (9th Cir. 1979) (per curiam) (presuming bias in a heroin conspiracy case on the part of a juror whose children were in prison for heroin-related crimes); *United States v. Allsup*, 566 F.2d 68, 71-72 (9th Cir. 1977) (holding that bias may be presumed from the "potential for substantial emotional involvement" inherent where prospective jurors worked for a bank, which had a branch that defendants were charged with robbing).

By contrast, in *Fields*, this court sitting en banc concluded that the challenged juror did not harbor either actual or implied bias, despite the fact that his wife was a victim of a traumatic assault similar to the one involved at trial. 503 F.3d at 764-65. During voir dire, the juror volunteered that his "wife was assaulted and beaten, robbed, two years ago Christmas." *Id.* at 764. When asked if he would be able to be fair and impartial, the juror answered in the affirmative. *Id.* He

was subsequently empaneled on the jury with no objections from either party. *Id.* On collateral review and following an evidentiary hearing at this court's request, we affirmed the district court's finding that the juror had "truthfully represented that he was impartial" during voir dire. *Id.* at 767. Therefore, "there was no manifest error in the district court's finding that [the juror] was not actually biased." *Id.*

*Fields* also declined to presume bias on the part of the challenged juror, holding that "[b]eing the spouse of a rape victim is not, in and of itself, such an 'extreme' or 'extraordinary' situation that it should automatically disqualify one from serving on a jury in a case that involves rape." *Id.* at 774. In so ruling, we emphasized that "prudence dictates that courts [determining whether to presume bias] should hesitate before formulating categories of relationships which bar jurors from serving in certain types of trials." *Id.* at 772, quoting *Tinsley*, 895 F.2d at 527; *see also Tinsley*, 895 F.2d at 529 (holding that a presumption of juror bias was unwarranted where the defendant was on trial for rape, and the challenged juror had worked as a psychiatric social worker trained to deal with rape victims and at one point had testified on behalf of a rape victim).

## B.

**[5]** In this case, we conclude that the evidence of juror bias was insufficient to require the district court to strike Jane Doe from the jury sua sponte. When asked, "[d]o you think that what happened [to your uncle] would affect you, in any way, in being a fair juror in this case?" Jane Doe responded that she did not think so. After being pressed further by the district court, she answered, "no, I'll be fine. No. Actually, I'm fine." Critically, *none* of the subsequent questions explicitly returned to the theme of *whether she could be a fair juror in this case*. Rather, she was asked whether she could "put that [event] out of [her] mind," and whether "[the event] would cause you a problem." To these inquiries, Jane Doe answered

that the experience "did affect my family, so I think, yes, it will affect me."

**[6]** Jane Doe's answers were too vague and ambiguous to have obliged the district court to strike her sua sponte for actual bias. In response to the only question directly inquiring into her ability to be an impartial juror, Jane Doe explicitly stated that her uncle's death at the hands of a drug dealer would not affect her impartiality. Although she later stated that her uncle's death would "affect" her, she did not elaborate on precisely *how* she would be affected, nor did the parties ask for further clarification. Clearly, once her uncle's death was raised, it would be difficult for her to erase the event from her mind; but she never stated that it would prevent her from being impartial. Thus, unlike the juror in *Gonzalez* who testified that her husband's drug dealing was a *primary* reason for their eventual divorce, Jane Doe did not indicate that her uncle's death affected her in such a way as to impair her ability to be impartial. The district court therefore did not err in failing sua sponte to strike Jane Doe for actual bias. *Cf. United States v. Alexander*, 48 F.3d 1477, 1484 (9th Cir. 1995) (denying actual bias claim where a juror affirmatively stated that she could remain impartial, despite the fact that her statements were somewhat equivocal).

**[7]** In addition, the circumstances do not warrant a presumption of bias. Mitchell was on trial for possession of marijuana and possession with intent to distribute cocaine base. Jane Doe testified that her uncle was killed by a drug dealer in Mexico some ten years prior to trial. Although drug trafficking features in both Jane Doe's personal experience and Mitchell's conduct, we rejected an even closer personal connection as grounds for implied bias in *Fields.* In that case, the challenged juror's wife had been a victim of an assault that was extremely similar to the conduct on trial. Yet we concluded that "[i]t cannot be said that the average person in [the challenged juror's] position would be highly unlikely to remain impartial." 503 F.3d at 774.

**[8]** Similarly here, Jane Doe's testimony reveals that her uncle's killing at the hands of a drug dealer occurred a full decade before the trial, and in another country while she was in the United States. Moreover, Jane Doe had no personal recollection of the circumstances of her uncle's killing except in the most general of terms. It is also salient that Mitchell was not accused of any violent conduct, making it even less likely that Jane Doe would connect him to her uncle's killer. Thus, this is not a case like *Gonzalez*, *Eubanks*, or *Allsup*, where the challenged juror's personal experience closely mirrored the conduct that was on trial, or where the juror's personal situation made the juror especially vulnerable to bias because the case featured the same kind of conduct to which the juror was exposed. The district court therefore did not err; the district judge was not required to remove Jane Doe as a prospective juror sua sponte on the theory of implied bias.

## C.

The dissent reads our precedents differently, concluding that *Gonzales* compels reversal of Mitchell's conviction. However, as described above, critical distinctions lie between *Gonzales* and this case. Chief among those distinctions is the fact that the defendant in *Gonzales* raised his claim of juror bias during voir dire, whereas Mitchell did not do so here. In fact, none of the cases the dissent cites in support of its position involves situations where, as here, the defendant failed to raise objections to the challenged juror at trial. This distinction is crucial. We have emphasized that, "[i]n most situations, voir dire, 'the method we have relied on since the beginning,' should suffice to identify juror bias." *Tinsley*, 895 F.2d at 528, quoting *Patton v. Yount*, 467 U.S. 1025, 1038 (1984); *see also Fields*, 503 F.3d at 774 ("It is the role of voir dire to ferret out [relationships evidencing juror bias], and to develop the extent to which the juror's ability to be impartial in the particular case is actually, or presumptively, affected"). Thus, "[c]hallenges for cause are the means by which partial or biased jurors should be eliminated." *Gonzalez*, 214 F.3d at

1111; *cf. Yakus v. United States*, 321 U.S. 414, 444 (1944) ("No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it").

**[9]** Here, the court properly inquired into Jane Doe's ability to be impartial and the parties were given an opportunity to follow up on that line of questioning, but were apparently satisfied with what they heard. Moreover, there is no allegation that Jane Doe was dishonest in her responses to the court's questioning, or that she otherwise concealed material information about her past. *Cf. Fields*, 503 F.3d at 773 ("[W]e have never [presumed bias] when the juror was honest on voir dire"). Certainly, it must be significant that neither party at the time moved to strike Jane Doe for cause, neither attempted to elicit additional information about her uncle's killing to set up a challenge, and neither exercised a peremptory challenge to exclude her. Under these circumstances, where the evidence of juror bias is weak, and neither party challenged the juror for cause, it is not error for the district court to allow the juror to serve at trial.

## IV.

Because we conclude that Jane Doe's voir dire statements were insufficient to evidence impermissible bias, we hold that the district court did not err in failing to strike her from the jury sua sponte. There was therefore no violation of Mitchell's Sixth Amendment right to an impartial jury. For these reasons, and for those stated in the companion unpublished disposition, we uphold Mitchell's conviction and sentence.

**AFFIRMED.**

THOMAS, Circuit Judge, dissenting:

A prospective juror told the court that her ability to be a fair juror would be affected because a drug dealer had murdered her uncle. Despite this admission, she was nevertheless seated. Because the presence of a biased juror is structural error requiring reversal, I respectfully dissent.

A juror is "biased in fact" when the juror has "a state of mind that leads to an inference that the person will not act with entire impartiality." *United States v. Gonzalez*, 214 F.3d 1109, 1112 (9th Cir. 2000) (quoting *United States v. Torres*, 128 F.3d 38, 43 (2nd Cir. 1997)). "Actual bias is typically found when a prospective juror states that he can not be impartial." *Fields v. Brown*, 503 F.3d 755, 767 (9th Cir. 2007) (en banc). Because an impartial jury is so fundamental to the Sixth Amendment right to a fair trial, "[d]oubts regarding bias must be resolved against the juror." *Gonzalez*, 214 F.3d at 1114 (quoting *Burton v. Johnson*, 948 F.2d 1150, 1158 (10th Cir. 1991)).

Here, the trial judge began by asking the juror whether she thought that her experience would affect her "in any way, in being a fair juror in this case?" After some equivocal colloquy, the trial judge asked for "pretty direct assurance" as to whether her experience "would cause [her] a problem." After an ambiguous answer, the court pressed further, asking directly whether the juror thought it would cause her a problem. In response, the juror finally said that the murder of her uncle "did affect my family, so I think, yes it will affect me." The court then told the juror to return to her seat.

Our case law compels the conclusion that the juror was impermissibly biased. In *Gonzales*, we held that a juror was impliedly and actually biased even though the juror never once stated that she could not be impartial. *Gonzales*, 214 F.3d at 1114. The prospective juror there stated repeatedly that she would "try" to treat the defendant fairly. *Id.* at 1111.

That was enough for us to conclude that the prospective juror was actually biased. We held that, "[w]hen a juror is unable to state that she will serve fairly and impartially despite being asked repeatedly for such assurances, we can have no confidence that the juror will 'lay aside' her biases or her prejudicial personal experiences and render a fair and impartial verdict." *Id.* at 1114.

The juror's answers here reflect more bias than the prospective juror in *Gonzales*. In *Gonzales*, the prospective juror was at least able to state conclusively that she would try to be impartial. Here, the juror's final answer was that her ability to serve as a juror would be affected by her past experience. She could not ultimately state that she could "serve fairly and impartially." *Id.*[1]

The facts of this case and *Gonzales* stand in stark contrast to cases in which we have concluded that no actual or implied bias existed. For example, in *Fields*, the prospective juror responded that he would be unaffected by his prior experience and would base his decision "strictly on the charges and the evidence that's presented." 503 F.3d at 764. When the judge followed up with: "And you would accept and follow the law

---

[1]The majority attempts to distinguish Gonzales by noting that in *Gonzales*, the defendant's counsel asked to strike the prospective juror. Because Mitchell's counsel did not move to strike Jane Doe, the majority argues, Doe's bias must have been particularly severe. The majority thus creates two standards for juror bias depending on whether the bias was objected to below. This argument finds no support in case law and is irrelevant to a structural error analysis because it conflates the standard of review and bias analyses. The correct analysis is simpler: the presence of a biased juror is structural error requiring automatic reversal.

The majority additionally invokes the principle that a defendant may forfeit a constitutional right by failing to assert the right. That rule does not apply in cases of structural error. The Second Circuit has held that the right to an impartial factfinder was "inherently unwaivable" because to hold otherwise would result in "fundamentally unfair" proceedings against the defendant. *United States v. Nelson*, 277 F.3d 164, 205 (2nd Cir. 2002) (citing *United States v. Fay*, 300 F.2d 345, 350-51 (2d Cir. 1962)).

given to you by the court and apply it, to the best of your ability, to the facts as you determine them to be?," the prospective juror responded: "Definitely." *Id.* The prospective juror's answers were clear and unambiguous, and the *Fields* court rightfully had no trouble dismissing the actual bias claim. Similarly, in *United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007), the juror initially indicated she thought that certain types of crime should be punishable by death, but concluded by saying "she could keep an open mind." *Id.* at 955. *Fields* and *Mitchell* follow the usual course of voir dire examination in which a juror expresses some reservations, but upon questioning resolves doubt and asserts that he or she can put preconceptions or prior experiences aside and impartially decide the case based on an open-minded and fair consideration of the applicable law and evidence. *See also United States v. Nelson*, 277 F.3d 164, 202-03 (2nd Cir. 2002) ("[I]t is important that a juror who has expressed doubts about his or her impartiality also unambiguously assure the district court, in the face of these doubts, of her willingness to exert truly best efforts to decide the case without reference to the predispositions and based solely on the evidence presented at trial.").

In contrast, the juror in our case affirmatively concluded that her past experience would affect her ability to be a fair juror. Her statement did not come at the beginning of voir dire; it came at the conclusion of her examination after the trial court had emphasized the need for a "direct assurance" of impartiality. "A court confronted with a colorable claim of juror bias must undertake an investigation of the relevant facts and circumstances." *Dyer v. Calderon*, 151 F.3d 970, 974 (9th Cir. 1998) (en banc). Moreover, "[a] court must excuse a prospective juror if actual bias is discovered during voir dire." *United States v. Allsup*, 566 F.2d 68, 71 (9th Cir. 1977). In the face of a statement that a juror's past experience would affect her ability to be a fair juror, the district court should not have allowed her to sit on the jury.[2]

---

[2]The majority cannot cite one case where a court found impartial a prospective juror who ultimately concluded, as Doe did, that she was affected by a crime similar to the one bring tried.

Juror bias is structural error requiring reversal. *Dyer*, 151 F.3d at 973 n.2. We have long recognized that biased jurors so infect the criminal trial process that their presence on a jury requires automatic reversal of any verdict produced by that jury. *United States v. Hendrix*, 549 F.2d 1225, 1227 (9th Cir. 1977). If even one juror is unduly biased or prejudiced or improperly influenced, the criminal defendant is denied his Sixth Amendment right to an impartial panel. *Id.*

As the majority rightly points out, defense counsel did not challenge the juror for cause or raise any other objection to her empanelment. However, because juror bias is a structural error, plain error analysis is not appropriate. *United States v. Hamilton*, 391 F.3d 1066, 1071 (9th Cir. 2004) (" 'We only review for plain error or assess whether an error is harmless when the error is not structural.' " (quoting *United States v. Sanchez-Cervantes*, 282 F.3d 664, 670 (9th Cir. 2002))).

Additionally, although the majority correctly observes that "[t]he principal way" trial judges normally assure an impartial jury "is through the system of challenges exercised during voir dire," *Allsup*, 566 F.2d at 71, our case law nowhere defines that system of challenges as the *only* way to achieve an impartial jury. *See Dyer*, 151 F.3d at 973 (describing voir dire only as "[o]ne important mechanism" for ensuring impartiality). Trial judges have a duty to excuse a prospective juror if bias is discovered during voir dire. *Allsup*, 566 F.2d at 71. Because seating a biased juror is a structural error, reversal is required.

For these reasons, I respectfully dissent.