**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARVIN HOWARD BOCKTING,
              *Petitioner-Appellant,*

              v.

ROBERT BAYER,
              *Respondent-Appellee.*

No. 02-15866

D.C. No.
CV-98-00764-ECR
District of
Nevada, Reno

ORDER

Filed August 11, 2005

Before: J. Clifford Wallace, John T. Noonan, and
M. Margaret McKeown, Circuit Judges.

Order;
Dissent by Judge O'Scannlain

---

## ORDER

Judge McKeown votes to deny the petition for rehearing en banc, and Judge Noonan so recommends. Judge Wallace recommends granting the petition for rehearing en banc.

The full court was advised of the petition for rehearing en banc. A judge of the court requested a vote on whether to rehear the matter en banc, but the matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc rehearing.

The petition for rehearing en banc is **DENIED.**

---

O'SCANNLAIN, Circuit Judge, with whom KOZINSKI, KLEINFELD, GRABER, GOULD, TALLMAN, BYBEE, CALLAHAN, and BEA, Circuit Judges, join, dissenting from denial of rehearing en banc:

Judge Wallace's dissent ably explains why the court errs in holding that the new rule established in *Crawford v. Washington*, 541 U.S. 36 (2004), applies retroactively. *See Bockting v. Bayer*, 399 F.3d 1010, 1024 (9th Cir. Feb. 22, 2005) (Wallace, J., concurring in part and dissenting in part). I write only to add a few additional reasons why I believe the majority's holding—which conflicts with the conclusion of all five other circuits to have reached the issue, *see infra* at 10406-07—is in serious tension with the retroactivity jurisprudence of the Supreme Court as well as our own court. With respect, I believe that we have erred in failing to rehear this case en banc.

I

A

The last time the Supreme Court had occasion to reverse this circuit's holding that a new rule of criminal procedure applied retroactively, it instructed us as follows: "That a new procedural rule is 'fundamental' in some abstract sense is not enough; the rule must be one without which the likelihood of an accurate conviction is *seriously* diminished." *Schriro v. Summerlin*, 124 S. Ct. 2519, 2523 (2004) (internal quotation marks, brackets, and citation omitted). It seems to me that the majority ignores the emphasis that the Court itself placed on the word "seriously." Almost any new rule will work to a criminal defendant's advantage in some circumstances. The question, though, is whether *Crawford*'s new rule is of the magnitude of the one ruling that the Court has told us *would* apply retroactively—namely, the one articulated in *Gideon v. Wainwright*, 372 U.S. 335 (1963), that a defendant has the right to be represented by counsel.

Yet *Crawford* hardly bears comparison with *Gideon*. To deny a criminal defendant charged with a serious crime the benefit of counsel is to put him awash in a sea of doctrines, deadlines, and technicalities, in which his ability to defend his own interest is highly unlikely to survive. While we value individual autonomy enough to permit defendants to represent themselves when they so insist, *see Faretta v. California*, 422 U.S. 806 (1975), we do so knowing that such autonomy comes at a serious cost to our confidence in the ultimate verdict. *Id.* at 833. It is thus reasonable to say that, without counsel, "the likelihood of an accurate conviction is *seriously* diminished."

The *Crawford* rule simply does not approach this magnitude. It did not establish *ex nihilo* the right to confrontation, as *Gideon* established the right to counsel; it merely reshaped the contours of that right. The difference between the pre-*Crawford* regime of *Ohio v. Roberts*, 448 U.S. 56 (1980), in which out-of-court statements not subject to cross-examination were admissible if they bore adequate indicia of reliability, and the new regime in which they are *per se* inadmissible, is small in comparison to the difference between giving a defendant competent counsel and giving him none at all. *Cf. Sawyer v. Smith*, 497 U.S. 227, 244 (1990) ("But given that [the rule of *Caldwell v. Mississippi*, 472 U.S. 320 (1985),[1] ] was added to an existing guarantee of due process protection against fundamental unfairness, we cannot say this systemic rule enhancing reliability is an 'absolute prerequisite to fundamental fairness' of the type that may come within *Teague*'s second exception." (citation omitted)). It is thus apparent that the "narrow right . . . that [Crawford] affords to defendants in a limited class of . . . cases . . . possesses little of the 'watershed' character envisioned by *Teague*'s second exception." *O'Dell v. Netherland*, 521 U.S. 151, 167 (1997).

---

[1]*Caldwell* held that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." 472 U.S. at 328-29.

### B

Indeed, *Crawford*'s rule does less to decrease the chance of an inaccurate conviction than many rules that have been held *not* to apply retroactively. Most recently, in *Schardt v. Payne*, ___ F.3d ___, 2005 U.S. App. LEXIS 13569 (9th Cir. 2005), we refused to give retroactive effect to *Blakely v. Washington*, 124 S. Ct. 2531 (2004), which invalidated state sentencing guidelines that increased a defendant's sentence based on facts found by a judge by a mere preponderance of the evidence. *Id.* at 2537-38. The application of a mere *preponderance* standard instead of the reasonable-doubt standard required by *Blakely* surely increases the likelihood of inaccurate criminal punishment more than the admission of evidence under the *Roberts* test did.[2] *Cf. Ivan V. v. City of New York*, 407 U.S. 203, 204 (1972) (per curiam) ("[T]he reasonable-doubt standard is a prime instrument for reducing the risk of convictions resting on factual error." (quoting *In re Winship*, 397 U.S. 358, 363-64 (1970)); *id.* at 205 ("[T]he major purpose of the constitutional standard of proof beyond a reasonable doubt announced in *Winship* was to overcome an aspect of a criminal trial that substantially impairs the truth-finding function, and *Winship* is thus to be given complete retroactive effect."). If even the standard-of-proof aspect of *Blakely* does not satisfy the *Teague* test, I do not see how *Crawford* can do so.

---

[2]Of course, *Blakely* relates to the accuracy of sentences, not underlying convictions. *See United States v. Sanchez-Cervantes*, 282 F.3d 664, 671 (9th Cir. 2002) (relying, in part, on that difference in holding *Apprendi* not to apply retroactively). I do not see how the difference can be material, though, when the point of *Blakely* and the entire line of jurisprudence stemming from *Apprendi* is precisely that sentencing factors must be treated as elements of a crime when they increase the defendant's maximum sentence. Moreover, the Supreme Court has not distinguished between sentences and convictions when applying *Teague*; rather, it has implied that a watershed rule could be retroactive under *Teague* if it "seriously diminish[ed] the likelihood of obtaining an accurate determination in [a] sentencing proceeding." *Graham v. Collins*, 506 U.S. 461 (1993) (first alteration in original) (internal quotation marks omitted).

## C

Also instructive is *Gilmore v. Taylor*, 508 U.S. 333 (1993), in which the Supreme Court considered the retroactivity of the Seventh Circuit's holding that certain jury instructions in Illinois violated due process because they "allowed the jury to return a verdict of murder even if the jury made findings that should have resulted in a verdict of voluntary manslaughter," *Falconer v. Lane*, 905 F.2d 1129, 1130 (7th Cir. 1990). Under the challenged instructions, the Seventh Circuit had noted, "[n]o matter how clearly either the State or the defense proved the existence of the mitigating 'manslaughter defenses,' the jury could nevertheless return a murder verdict." *Id.* at 1136. Applying *Teague*, the Supreme Court noted that "the *Falconer* court expressed concern that the jury might have been confused by the instructions in question," but nevertheless refused to apply the rule retroactively because it did not "fall[ ] into that small core of rules requiring observance of those procedures that . . . are implicit in the concept of ordered liberty." *Gilmore*, 508 U.S. at 345 (quoting *Graham v. Collins*, 506 U.S. 461, 478 (1993)).

Thus even a rule forbidding a jury instruction that concededly permits the jury to convict the defendant of a crime he did not commit is insufficiently fundamental and accuracy-enhancing to warrant retroactive application under *Teague*. Again, the *Bockting* majority's holding is in serious tension with that of the Supreme Court. The only evidence admissible before *Crawford* but now excluded consists of out-of-court testimonial statements that trial and appellate courts have explicitly found to bear adequate indicia of reliability. It is difficult to see how the introduction of such evidence could be more likely to lead to the conviction of an innocent defendant than a set of jury instructions that significantly misdefine the substance of the crime.

## D

The *Bockting* majority points out, of course, that the *Crawford* Court severely criticized the 'indicia of reliability' test

that held sway under *Roberts*. And so it did. *See Crawford*, 541 U.S. at 62-65. The Court's criticism, however, is primarily of the test's doctrinal unmanageability, *see id.* at 63 (criticizing the *Roberts* test as "unpredictable" and "amorphous"), and its incompatibility with the Framers' intentions, *see id.* ("The unpardonable vice of the *Roberts* test [is] its demonstrated capacity to admit core testimonial statements that the Confrontation Clause plainly meant to exclude."); *id.* at 65 (conceding that "most of the usual safeguards of the adversary process attend the [admitted out-of-court] statement" but noting that "the single safeguard missing is the one the Confrontation Clause demands.") Neither of those criticisms goes directly to the crucial question, which is whether "the likelihood of an accurate conviction is *seriously* diminished" when evidence is admitted under the *Roberts* test.

The test may have been unpredictable *at the margins*, as almost any balancing test will be to one degree or another, but nothing in the *Crawford* opinion suggests that trial and appellate judges were likely to admit clearly unreliable evidence in anything but the exceptional case. Indeed, the Court stated that the vagueness of the *Roberts* test "might be a small concern in run-of-the-mill . . . prosecutions," even if it could leave defendants unprotected in "great state trials" in "politically charged cases like [Sir Walter] Raleigh's." *Id.* at 68.

Nor, of course, can the Court's emphasis on the stark incompatibility between the *Roberts* test and the Framers' understanding of the Confrontation Clause be taken to imply that the *Roberts* test dramatically increases the likelihood of an inaccurate conviction. "That the Framers made a particular judgment about the best way to ensure the reliability of testimony does not mean that any rule other than the one they envisioned creates an impermissibly high risk of inaccurate conviction." *Bockting*, 399 F.3d at 1029 (Wallace, J., concurring in part and dissenting in part); *cf. Crawford*, 541 U.S. at 61 ("[The Confrontation Clause] commands, not that evidence

be reliable, but that reliability be assessed in a particular manner.").

E

In that respect and others, *Crawford*'s rule resembles nothing so much as the *last* new rule we held to apply retroactively, only to be quickly reversed by the Supreme Court. In *Summerlin v. Stewart*, 341 F.3d 1082 (9th Cir. 2003), we gave retroactive application to the Court's holding in *Ring v. Arizona*, 536 U.S. 584 (2002), that juries and not judges must determine the existence of any aggravating factor necessary for imposition of the death penalty. *See Summerlin*, 341 F.3d at 1108-21. In *Ring*, the Court had emphasized that "[t]he guarantees of jury trial in the [Constitution] reflect a profound judgment about the way in which law should be enforced and justice administered." 536 U.S. at 609 (quoting *Duncan v. Louisiana*, 391 U.S. 145, 155-56 (1968)). The Court had thus held that the Constitution reflects the Founders' insistence that the fairness and accuracy of criminal prosecutions (and imposition of the death penalty) are best guaranteed by giving the defendant the ability to insist that relevant facts be decided by a jury. *See id.*; *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000) (noting that jury factfinding is necessary "[t]o guard against a spirit of oppression and tyranny on the part of rulers.").

Nevertheless, when we held that *Ring* applied retroactively because it was a watershed decision of criminal procedure without which the fairness and accuracy of a death sentence were seriously diminished, *see Summerlin*, 341 F.3d at 1108-21, the Supreme Court quickly reversed us. *See Summerlin*, 124 S. Ct. at 2524-26. Even though the Constitution demands factfinding by juries—and even though juries *may*, in fact, be more accurate factfinders than judges—the Court held that there is not sufficient evidence to demonstrate that "judicial factfinding so *seriously* diminishes accuracy that there is an impermissibly large risk of punishing conduct that the law

does not reach." *Id.* at 2525 (internal quotation marks and brackets omitted).

A parallel principle governs this case: even though the Confrontation Clause demands the exclusion of out-of-court testimony—and even though blanket exclusion of such testimony may, in fact, be more accurate than the more nuanced rule of *Roberts*—there is little reason to think that judicial determination of reliability so seriously diminishes accuracy as to make likely the conviction of the innocent. If *Apprendi*, *Ring*, and *Blakely*, with their massive implications striking to the core of our system of criminal justice, were not watershed rules with retrospective application, then surely the *relatively* minor—though still quite significant—change wrought by *Crawford* is not either.[3]

## II

And such has been precisely the conclusion of every other circuit to have considered the question. *See Mungo v. Duncan*, 393 F.3d 327, 336 (2d Cir. 2004); *Dorchy v. Jones*, 398 F.3d

---

[3]The Seventh and Tenth Circuits have each argued that the watershed status of the *Crawford* rule is further belied by the fact that violations of the Confrontation Clause are subject to harmless-error review and thus are not structural error on par with the denial of counsel. *See Brown*, 381 F.3d at 1226-27; *Murillo*, 402 F.3d at 791. The *Bockting* majority rejects this reasoning, arguing that even non-structural constitutional rules can constitute watershed, bedrock rules of procedure. *See Bockting*, 399 F.3d at 1020. Whether or not the majority is correct, though, its holding flatly contradicts our holding and reasoning in *United States v. Sanchez-Cervantes*, 282 F.3d 664 (9th Cir. 2002), which held that *Apprendi* did not apply retroactively on collateral review. The *Sanchez-Cervantes* panel concluded that "[b]y applying harmless error analysis . . . to *Apprendi* claims, we have necessarily held that *Apprendi* errors do not render a trial fundamentally unfair. Therefore, it would seem illogical to hold that such an error is a watershed rule." *Id.* at 670. The *Bockting* majority does not even cite *Sanchez-Cervantes*, and—whether or not the rationale in that case was correct—the conflict between the two opinions provides another reason to rehear *Bockting* en banc.

783, 788 (6th Cir. Feb. 23, 2005); *Murillo v. Frank*, 402 F.3d 786, 790 (7th Cir. Apr. 1, 2005); *Bintz v. Bertrand*, 403 F.3d 859, 867 (7th Cir. Apr. 7, 2005); *Brown v. Uphoff*, 381 F.3d 1219, 1227 (10th Cir. 2004); *see also Evans v. Luebbers*, 371 F.3d 438, 444-45 (8th Cir. 2004) (strongly suggesting that *Crawford* does not apply retroactively). It was the conclusion reached by Judge Wallace in his convincing dissent. *See Bockting*, 399 F.3d at 1024 (Wallace, J., concurring in part and dissenting in part). It was the unanimous conclusion of three judges of this court in an earlier, unpublished disposition. *See Hiracheta v. Att'y Gen'l*, 105 Fed. Appx. 937, 938 (9th Cir. 2004) (unpublished memorandum disposition).[4]

Even the Supreme Court itself has indirectly suggested that the *Crawford* rule is not retroactive. In its opinion in *Summerlin*—issued well *after Crawford* and written by Justice Scalia, who also authored the opinion in *Crawford*—the Court stated that the class of retroactively applicable rules "is extremely narrow, and it is unlikely that *any* has yet to emerge." *Summerlin*, 124 S. Ct. at 2523 (internal quotation marks, ellipsis, and brackets omitted) (emphasis added) (quoting *Tyler v. Cain*, 533 U.S. 656, 667 n.7 (2001)). The *Bockting* majority argues that this pronouncement from the Court "offer[s] discouragement but no guidance." *Bockting*, 399 F.3d at 1016. But we treat even Supreme Court dicta with "due deference," *United States v. Baird*, 85 F.3d 450, 453 (9th Cir. 1996), and the Court's statement suggests that our holding that *Crawford* applies retroactively is likely to meet the same fate as our similar holding in *Summerlin* with regard to *Ring*—namely, speedy reversal.

The two-judge *Bockting* majority thus stands alone in its conviction that *Crawford* applies retroactively. Its holding will have serious consequences: it will open the door for a

---

[4]I cite *Hiracheta* not as precedent, of course, but because a conflict with a previously issued memorandum disposition is a factor weighing in favor of rehearing en banc. *See* Ninth Circuit Rule 36-3(b)(iii).

slew of habeas petitions (and, for federal prisoners, motions under 28 U.S.C. § 2255) from prisoners whose convictions were based, even partially, on out-of-court testimonial statements. Concerns about taxing the state and federal governments' resources to retry convicted criminals should not prevent us from granting writs of habeas corpus when the Constitution requires it. But those concerns certainly counsel us to consider very carefully any precedent that will lead to the granting of an unknowable—but likely large—number of such writs. *See Beard v. Banks*, 124 S. Ct. 2504, 2511 ("In many ways the application of new rules to cases on collateral review may be more intrusive than the enjoining of criminal prosecutions, for it *continually* forces the States to marshal resources in order to keep in prison defendants whose trials and appeals conformed to then-existing constitutional standards." (quoting *Teague*, 489 U.S. at 310) (citations omitted)).

### III

Because *Bockting* conflicts with the decision of every other circuit to have considered the retroactivity of *Crawford*; because it conflicts with our own decision in *Hiracheta*; and, most of all, because it was wrongly decided, I respectfully dissent from our order denying rehearing en banc.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2005 Thomson/West.