**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RICHARD LEE MASON,
      *Petitioner-Appellant,*

v.

M. YARBOROUGH,
      *Respondent-Appellee.*

No. 04-17330

D.C. No.
CV-03-00450-FCD/
JFM

OPINION

Appeal from the United States District Court
for the Eastern District of California
Frank C. Damrell, District Judge, Presiding

Argued and Submitted
February 16, 2006—San Francisco, California

Filed May 5, 2006

Before: J. Clifford Wallace, Michael Daly Hawkins, and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Hawkins;
Concurrence by Judge Wallace

## COUNSEL

Matthew Alger, Clovis, California, for the appellant.

Justain P. Riley, Deputy Attorney General, Sacramento, California, for the appellee.

## OPINION

HAWKINS, Circuit Judge:

Petitioner-Appellant Richard Lee Mason ("Mason") seeks habeas corpus review of his state court convictions arising out of two separate shooting incidents in Stockton, California, one resulting in first-degree murder charges. Mason's fundamen-

tal contention here is that the admission of the fact that a co-participant made a statement to law enforcement, but not the content of that statement, violated his confrontation rights. Exercising our jurisdiction under 28 U.S.C. § 1291, as constrained by 28 U.S.C. § 2254(d)(1),[1] we affirm the district court's denial of habeas relief.

In the early morning hours of May 26, 1996, and twice again later that night, the home of Debra Aguilera was struck by gunfire. A few days prior, Mason was seen in the passenger seat of a maroon BMW owned by Alder Fenton, displaying a handgun and bragging to Fenton's brother Jeremiah: "Tell Ray I have something for him." Jeremiah knew "Ray" referred to Raymond Munoz, Ms. Aguilera's oldest son, who was in the house at the time of the shooting and who had been involved in an altercation with Mason some six months earlier.

Later the same evening, neighbors of Sally Purcell heard a man yelling, "Mike," outside the Purcell house, followed by several gunshots fired in rapid succession and then a car speeding away. Michael Kolkhurst, a man Mason believed had molested his stepsister, was living with Ms. Purcell. Startled awake by the gunfire, Purcell, who had been asleep in another room, found Kolkhurst lying in bed and covered in blood. Efforts by paramedics called to the scene failed to revive Kolkhurst, and he died from his wounds.

A few weeks later, Valerie Cole, the mother of one of Mason's friends, found Mason asleep in her son's car outside her home. Mason explained that he was sleeping there out of fear that the police were looking for him. Mason asked Cole

---

[1]To grant habeas relief, a federal court must find that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d)(1).

to call a friend of hers at the sheriff's department to see if there were any warrants out for his arrest. When Cole asked why, Mason said he had shot someone in Stockton, aiming for the man's knees and instead hitting him in the chest. Mason added that there was someone with him that night who may have "snitched" on him. Cole made the requested call, which eventually led to Mason's arrest.

At Mason's trial, the prosecution called Stockton Police Detective Richard Salsedo. The detective had interviewed Alder Fenton in the course of the investigation. Critical to Mason's claim is the following passage from Detective Salsedo's testimony:

> Q. And did you take a — did you take a statement from him [Alder Fenton]?
>
> A. Yes, I took a seven-hour statement from him.
>
> Q. And after you took the seven-hour statement did you place him [Alder Fenton] under arrest?
>
> A. Yes I did.
>
> Mr. Himelblau [the prosecutor]: No further questions.
>
> Mr. Hickey [defense counsel]: I'm going to object to the last, it's irrelevant and hearsay and ask it to be stricken from the record.
>
> The Court: Overruled.
>
> Mr. Hickey: Thank you.

[1] It is this testimony that Mason claims violated his confrontation rights. Specifically, he claims that the admission of the fact of Fenton's statement, under these circumstances, was

essentially the same as admitting its content, thus violating the clearly established principle of *Bruton v. United States*, 391 U.S. 123 (1968), that the admission of a non-testifying codefendant's "powerfully incriminating extrajudicial statement" violates a defendant's Sixth Amendment right to confront his accuser. *Id.* at 135-36.

**[2]** *Bruton*'s protection, however, does not extend to all such statements. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), specifically exempts a statement, not incriminating on its face, that implicates the defendant only in connection to other admitted evidence. On the other hand, the mere removal of a codefendant's name from a statement that obviously refers to the defendant, does not insulate the statement from *Bruton* scrutiny. *Gray v. Maryland*, 523 U.S. 185, 193-96 (1998).

**[3]** The statement here seems closer to *Richardson* than *Gray* for at least two reasons. First, Fenton's statement to Detective Salsedo does not mention Mason at all. In fact, because its content never came into evidence, as far as the jury was concerned, it mentioned no one at all. For all the jury knew, Fenton confessed to his own involvement in the shootings and was arrested. Second, as *Gray* itself notes, the facts that would have allowed the jury to infer that Fenton's statement implicated Mason came through other, properly admitted evidence, particularly through Cole's testimony of what Mason told her. *Gray*, 523 U.S. at 195 ("*Richardson* placed outside the scope of *Bruton*'s rule those statements that incriminate inferentially."); *see also United States v. Sherlock*, 962 F.2d 1349, 1360-61 (9th Cir. 1992) (as amended) (codefendant's statement redacted to exclude defendant's name and incriminating only in light of other evidence).

We are not persuaded to the contrary by *Mason v. Scully*, 16 F.3d 38, 40-41 (2d Cir. 1994), a pre-AEDPA decision, where the officer testified that, after a conversation with a codefendant, the police began looking for the defendant.

There, the Second Circuit determined that the only inference the jury could draw is that the statement implicated the defendant and thus violated *Bruton*. *Id.* at 43-44. Here, the only immediate step taken by the officer hearing the statement was to arrest its maker. In another pre-AEDPA decision, *Foy v. Donnelly*, 959 F.2d 1307, 1313 (5th Cir. 1992), the Fifth Circuit found no *Bruton* violation where the officer testified he sought an arrest warrant for the defendant after conducting an investigation that included taking a codefendant's statement.[2]

[4] Moreover, there is a real question whether the Confrontation Clause protections apply to Detective Salsedo's testimony, because it is not at all clear that Alder Fenton was a "witness against" Mason as that term has been defined by the Supreme Court.

[5] In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court evaluated the meaning of the Clause, concluding that " 'witnesses' against the accused . . . [means] those who 'bear testimony.' " 541 U.S. at 51. " 'Testimony,' in turn, is typically, '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " *Id.* at 51 (citation omitted). Because Fenton's words were never admitted into evidence, he could not "bear testimony" against Mason.

[6] For all these reasons, we cannot say that the California Court of Appeal's application of *Bruton* to these facts was contrary to clearly established Supreme Court law or that it

---

[2]Mason argues that *Richardson*'s exception of inferentially incriminating statements from the application of *Bruton* is expressly conditioned on the giving of a limiting instruction to the jury. Whatever strength that argument might ordinarily have, we cannot consider it here because Mason never requested such an instruction at trial and the Certificate of Appealability he obtained for this appeal does not raise the issue of a state trial court's sua sponte duty to give a limiting instruction in such a circumstance. *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005).

applied that law in an objectively unreasonable way. We therefore affirm the district court's denial of habeas relief.

AFFIRMED.

WALLACE, Senior Circuit Judge, concurring in the judgment:

I agree with the majority's ultimate conclusion that Mason is not entitled to habeas relief. Because I disagree with much of the majority's analysis, I write separately. Under the applicable Supreme Court precedents, Fenton was not a "witness against" Mason, and thus Mason's allegations fall entirely outside of the protections of the Confrontation Clause of the Sixth Amendment. However, unlike the majority, I do not believe that *Bruton v. United States*, 391 U.S. 123 (1968), *Richardson v. Marsh*, 481 U.S. 200 (1987), and *Gray v. Maryland*, 523 U.S. 185 (1998) are applicable to this appeal.

## I.

The Confrontation Clause guarantees "the accused the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. Amend. VI. Thus, as a threshold matter, there must be a "witness[ ] against" the accused for the Confrontation Clause to be invoked properly. In the most recent Supreme Court precedent, *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court considered three possible meanings of this clause. The Court stated that "[o]ne could plausibly read 'witnesses against' a defendant to mean those who actually testify at trial, those whose statements are offered at trial, or something in-between . . . ." *Id.* at 42-43 (citations omitted). Notably, not even the most expansive possibility ("those whose statements are offered at trial") includes situations where the fact that a person made a statement, without any content of that statement, was admitted into evidence.

The Court ultimately settled on a definition that was "something in-between" and held " 'witnesses' against the accused . . . [means] those who 'bear testimony.' " *Id.* at 51 (citation omitted). " 'Testimony,' in turn, is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " *Id.* (citation omitted).

Although *Crawford* was decided after Mason's conviction became final, intervening precedents are applied retroactively against habeas petitioners. *See Lockhart v. Fretwell*, 506 U.S. 364, 372-73 (1993). This is because "[a] federal habeas petitioner has no interest in the finality of the state-court judgment under which he is incarcerated: Indeed, the very purpose of his habeas petition is to overturn that judgment." *Id.* at 373. Furthermore, this court has held that *Crawford* is fully retroactive. *See Bockting v. Bayer*, 399 F.3d 1010, 1012-13 (9th Cir. 2005), *amended by* 408 F.3d 1127, *reh'r en banc denied*, 418 F.3d 1055 (2005); *but see id.* at 1024-30 (Wallace, J. dissenting).

If Fenton's statement to the police had been admitted into evidence, it would unambiguously have been testimonial under *Crawford*, requiring Mason to have an opportunity to cross-examine Fenton regardless of whether a hearsay exception applied. *Crawford*, 541 U.S. at 52, 68. However, because the content of Fenton's statement was never admitted into evidence, the California Court of Appeal did not unreasonably apply Supreme Court precedents when it held that Mason's claim lacked merit because "Alder Fenton's confession was not admitted into evidence." [ER tab 8, page 9] It is not an unreasonable application of federal law, as set out by *Crawford*, to hold that a person did not "bear testimony" when none of his words were ever introduced into evidence. Therefore, Mason cannot obtain habeas relief under 28 U.S.C. § 2254(d).

The majority appears to concede that this analysis is feasible when it states that "there is a real question whether the

Confrontation Clause protections apply to Detective Salsedo's testimony." Maj. op. at 5107. I go further: I believe this is the only proper basis to decide this appeal. As I discuss below, the majority's application of *Bruton*, *Richardson*, and *Gray* to single defendant trials creates a grave danger that our jurisprudence will permit admission of evidence in clear violation of *Crawford*, as long as it is not "powerfully incriminating" or only "incriminate[s] inferentially." I now explain why.

## II.

I do not concur in the majority's application of *Bruton*, *Richardson*, and *Gray*. All of these cases address the issue of whether an admission admitted against one defendant is also deemed to be a "witness[ ] against" the co-defendant, thus invoking the protections of the Confrontation Clause. Because Mason was tried alone, these precedents plainly do not apply. The admission of the fact of Fenton's statement must either not, by itself, make Fenton a "witness[ ] against" Mason, or else it is a testimonial statement by Fenton requiring a full opportunity for cross-examination. *See Crawford*, 541 U.S. at 52, 68. The majority cannot use *Bruton*, *Richardson*, and *Gray* to hold that the statement was admitted only against a co-defendant, because there were none at Mason's trial.

In *Bruton*, an out-of-court admission by Bruton's co-defendant, Evans, was admitted into evidence in the joint trial. *Bruton*, 391 U.S. at 124. That admission "powerfully incriminat[ed]" Bruton by name. *Id.* at 135-36. Although the jury was given a limiting instruction that it could only consider the confession against Evans, the Supreme Court held that "the introduction of Evans' confession posed a substantial threat to [Bruton's] right to confront the witnesses against him, and this is a hazard [the Court] cannot ignore." *Id.* at 137. Thus, Evans was effectively deemed to be a witness against Bruton, as well as himself, and because of the nature of the confession, this could not be overcome by a limiting

instruction. As such, Bruton's Confrontation Clause rights were violated. *Id.* at 135-37.

*Richardson* also involved a joint trial of two defendants (Marsh and Williams). *Richardson*, 481 U.S. at 202. The confession of the co-defendant, Williams, was introduced into evidence. *Id.* at 203. That confession, unlike the one at issue in *Bruton*, was redacted so that it contained no reference to Marsh. *Id.* In addition, the jury was "admonished not to use it in any way against respondent." *Id.* at 204.

The Court in *Richardson* held that "[o]rdinarily, a witness whose testimony is introduced at a joint trial is *not considered to be a witness 'against' a defendant* if the jury is instructed to consider that testimony only against a codefendant." *Id.* at 206 (emphasis added). The Court based this holding in part on "the almost invariable assumption of the law that jurors follow their instructions . . . ." *Id.* (citations omitted). Thus, the Court held that the redaction and limiting instructions effectively prevented Williams from being a "witness against" Marsh, and therefore the protections of the Confrontation Clause were not at issue.

*Gray* also addressed a confession by one defendant in a joint trial. *Gray*, 523 U.S. at 188. The redacted admission of Gray's co-defendant (Bell) was introduced into evidence and a limiting instruction was given. *Id.* at 188-89. However, the redaction merely "substitut[ed] for the defendant's name in the confession a blank space or the word 'deleted.' " *Id.* at 188. There the Court held that "[t]he blank space in an obviously redacted confession also points directly to the defendant, and it accuses the defendant in a manner similar to Evans' use of Bruton's name or to a testifying codefendant's accusatory finger." *Id.* at 194. Thus, the confession fell "within the class of statements to which *Bruton*'s protections apply." *Id.* at 197. Therefore, the Supreme Court implicitly held that Bell's confession made Bell a witness against Gray, entitling him, under *Bruton*, to confront Bell.

Read properly, *Bruton*, *Richardson*, and *Gray* all address the question of when an admission by one defendant can be considered a "witness" against another defendant. In the case before us, however, there cannot be any doubt against whom the evidence was introduced, as Mason was the *only* defendant on trial. If Fenton's redacted statement had been entered into evidence, he unquestionably would have been a "witness against" Mason. Here, because Fenton's statement was made to the police during the course of interrogation, it would clearly be testimonial, *see Crawford*, 541 U.S. at 52, and, if admitted into evidence, would require an opportunity for cross-examination, regardless of whether any hearsay exceptions applied. *Id.* at 68-69. This is not the case, however, because Fenton's statement (redacted or otherwise) was never entered into evidence.

Because Mason was tried separately, *Bruton*, *Richardson*, and *Gray* do not apply. Any evidence produced at trial was introduced against Mason. Because Fenton did not "bear testimony" of any kind against Mason, he was a "witness[ ] against" Mason. As such, the protections of the Confrontation Clause are not at issue, and the state courts did not unreasonably apply Supreme Court precedent in holding as much.

If Fenton had been a witness against Mason, however, neither redaction nor a limiting instruction could have relieved the state of its obligation to provide Mason an opportunity to cross-examine Fenton. The majority's application of *Richardson* would appear to be squarely at odds with *Crawford* by potentially allowing testimonial statements to be admitted without cross-examination against a defendant tried separately, as long as the statement was not facially incriminating.

## III.

Because Fenton did not "bear testimony," he was not a "witness[ ] against" Mason, and hence the protections of the Confrontation Clause do not apply. This should be the end of

the analysis. The majority errs in relying upon *Bruton*, *Richardson*, and *Gray*, which do not apply to this appeal as Mason was tried alone. Mason's claim must stand or fall on whether Fenton was a witness against him.

Because I agree that the district court properly denied habeas relief, I concur in the judgment.