**MAUVILLE A. LAKE, Appellant**

v.

**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**

D.C. Criminal App. No. 2005-24

District Court of the Virgin Islands

Division of St. Thomas and St. John, Appellate Division

July 22, 2009

LEONARD B. FRANCIS, JR., ESQ., St. Thomas, USVI, *For the Appellant.*

MATTHEW PHELAN, AAG, St. Thomas, USVI, *For the Appellee.*

GÓMEZ, *Chief Judge of the District Court of the Virgin Islands*; FINCH, *Judge of the District Court of the Virgin Islands*; and DONOHUE, *Judge of the Superior Court, Division of St. Croix, sitting by designation.*

## MEMORANDUM OPINION

(July 22, 2009)

Following a jury trial conducted in the Superior Court of the Virgin Islands, Division of St. Thomas and St. John[1] (the "Superior Court"), Mauville A. Lake was convicted of kidnaping for ransom, false imprisonment, first degree assault, and grand larceny. Lake now appeals his conviction.

## I. FACTS

On or about April 8, 2004, Elvis Burton ("Burton") agreed to meet Lake at approximately 10:00 p.m. that night in the Bunker Hill area of Charlotte Amalie, St. Thomas, U.S. Virgin Islands. When Lake arrived in his vehicle, he motioned for Burton to get into the vehicle. Burton got in.

The driver of the vehicle was Leburn Smith ("Smith") (together with Lake, the "defendants"). Lake was sitting in the front passenger seat. There was also a third passenger, who has been identified only as the "Rasta," or the "Dread". Lake asked Burton if he wanted to go to the country. Burton agreed to go along for the ride. During the drive, the men talked about how Burton had been robbed of two kilograms of cocaine the day before.

Lake, Smith, Burton, and the Dread arrived at an apartment in the Bovoni area of St. Thomas. All four men exited the vehicle and entered the apartment. Lake and Smith went into a bedroom while the Dread waited in the living room with Burton. Shortly thereafter, Smith and Lake emerged from the bedroom. Smith was carrying a telephone cord in his hand. Lake struck Burton, knocking him off of the couch. Lake and Smith tied Burton up with the telephone cord. During that process, the Dread held a gun to Burton's head. After tying Burton up, the Defendants handed him a blue cellular phone. They forced Burton to call someone in Tortola, British Virgin Islands, and ask for twenty kilograms of cocaine.

Lake and Smith wrapped Burton in a sheet "like a mummy," stuffed his mouth to prevent him from making noise, and covered his head. (Trial Tr.

---

[1]    At all times relevant to this appeal, the trial court was known as the Territorial Court of the Virgin Islands and its judges were referred to as Territorial Court Judges. Effective January 1, 2005, however, the name of the Territorial Court changed to Superior Court of the Virgin Islands. *See* Act of Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687 (2004). Recognizing this renaming, we employ the terms Superior Court and Superior Court Judge.

98, Dec. 10, 2004.) They placed Burton in the bathtub and told him they would come back to get him. A few minutes later, Burton was able to free himself from his restraints. Burton found his wallet and other belongings in the living room, but his wallet was missing approximately one hundred dollars in cash.

After escaping from the apartment in Bovoni, Burton called a friend, who dropped him off at the Four Winds police station. While he was making a report at the police station, Burton recognized the vehicle that had been used to kidnap him parked outside a convenience store across the street from the station. He recognized the driver as one of his attackers and noticed that the driver had a blue cellular phone like the one he had been forced to use during the attack. The police apprehended Smith and found the blue cellular phone and the key to the Bovoni apartment on his person. The police arrested Smith. Subsequently, the police arrested Lake.

On May 18, 2004, the government filed a nine-count Information against Lake. Count One charged Lake with kidnaping for ransom. Count Two charged Lake with false imprisonment. Count Three alleged that Lake used a dangerous weapon in the commission of a kidnaping for ransom. Counts Four and Five, respectively, charged Lake with first degree assault, and use of a dangerous weapon in the commission of first degree assault. Counts Six and Seven, respectively, charged Lake with first degree robbery, and use of a dangerous weapon in the commission of first degree robbery. Finally, Counts Eight and Nine, respectively, charged Lake with grand larceny, and use of a dangerous weapon during the commission of grand larceny.

Lake's trial, which was joined with Smith's trial, commenced on December 8, 2004. Detective Cleopatra Brooks, who had interviewed Smith at the Four Winds police station on April 9, 2004, also testified on behalf of the government. During direct examination, she stated:

> At about after 9:00 p.m. he [Smith] received a telephone call on his cellular phone while at home. He said about after 10:00 p.m. he went to the Tutu Hi-Rise and picked up a little dread. He then drove to the Bunker Hill area by Midtown Guess House and picked up the dude from down island. Then said when he got into the vehicle, the dude got into the vehicle, he began a conversation.

He begun a conversation and stated that on April 7, two thousand of this year, he went to the Fireman's Bar to sell two kilos of cocaine to Merrick and Kimbi. He stated that when he gave them the two kilos the men looked at it and they both draw guns on him and told him that they are keeping the drugs.

He said that he ran outside in the car that was waiting for him. The guy then told me to take him to Thomasville so he could look for Merrick. I then told the two men that I had some keys to my partner's apartment in Bovoni projects, that they can go there, discuss whatever they have to discuss. I then took them to the apartment, and opened the door, and went back into the car. About 10 to 15 minutes later the dread came out of the apartment said 'lets go.' I dropped the dread back to the apartment in Tutu Hi-Rise. I went back home. And my girlfriend, Charlotte Smith, called to pick her up from Plaza Extra. I then stopped at On the Run, and while exiting the store I was detained by the police.

(*Id.* at 275-77.) Detective Brooks also testified that Smith answered, "no" when asked during the interview on April 9, 2004, whether he knew the man he picked up in Bunker Hill on the night in question, whether he and the Dread held the man against his will, whether he hit the man, and whether he knew anyone who did. The defense counsel did not object to the introduction of this testimony.

On the morning of December 9, 2004, the trial judge interviewed two jurors ("Juror R" and "Juror H"). The interviews were conducted in the judge's chambers, in the presence of all of the attorneys and away from all other jurors. Both Jurors R and H were asked if they knew Lake's mother, who worked at the Legislature of the Virgin Islands. Both jurors responded that they did know Lake's mother, but that such relationship would not have any impact on their deliberations in this case. The court allowed Jurors R and H to continue to serve on the jury. None of the attorneys objected.

After the two-day trial, the jury found Lake guilty of the offenses charged.

Lake timely appealed his conviction, raising the following issues. First, whether the trial court's admission into evidence of Detective Brooks' testimony regarding Smith violated the principles outlined in *United*

*States v. Bruton*, 391 U.S. 123, 126, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968). Second, whether the government's failure to provide Burton's cellular records to Lake before trial resulted in a violation of Federal Rule of Criminal Procedure 16 ("Rule 16"). Third, whether the trial court abused its discretion by interviewing Jurors R, and H, individually, on the morning of the second day of trial, and in allowing Jurors R and H to continue to serve on the jury after their individualized *voir dire.*

## II. JURISDICTION

This Court has jurisdiction over appeals of final judgments and orders of the Superior Court filed before January 29, 2007, the date on which the Supreme Court of the Virgin Islands was certified as ready to assume such jurisdiction. *See* Revised Organic Act of 1954 23A, 48 U.S.C. § 1613a; Act No. 6687 § 4 (October 29, 2004); *see also Joseph v. People of the V.I.*, Criminal No. 05-13 (D.C. App. Div. 2007) (explaining that this Court retained its appellate jurisdiction through the date of the certification of the Supreme Court of the Virgin Islands).[2]

## III. STANDARD OF REVIEW

The trial court's conclusions of law are subject to plenary review. *Saludes v. Ramos*, 744 F.2d 992 (3d Cir. 1984). Accordingly, we review *de novo* whether the admission of a non-testifying co-defendant's statement violates the defendant's Sixth Amendment right to confrontation. *See United States v. Mitchell*, 145 F.3d 572, 576 (3d Cir. 1998).

We review a trial court's denial of motions for mistrial and determinations with respect to juror competency for abuse of discretion.

---

[2]    The government argues that this Court lacks jurisdiction over Lake's appeal because the Judgment and Commitment was entered on February 3, 2004. It claims that Act No. 6687, enacted on October 29, 2004, revoked this Court's appellate jurisdiction by repealing 4 V.I.C. § 33 (formerly providing for this Court's appellate jurisdiction). *See* Act. No. 6687 § 4 ¶ 10. The government further claims that this Court's appellate jurisdiction was not reinstated until the passage of Act No. 6370, on March 5, 2005. *See* Act No. 6371 § 54(d)(1) ¶ 69. However, Act No. 6687 and Act No. 6371, respectively, did not revoke and reinstate this Court's appellate jurisdiction. Rather, both statutes provide that this Court maintained uninterrupted jurisdiction over appeals from the Superior Court through the effective date of the Act establishing the Supreme Court, and until the certification of the Supreme Court's readiness to accept jurisdiction. *See Joseph,* Criminal No. 05-13 (D.C. App. Div. 2007).

*See United States v. Vega*, 285 F.3d 256, 266-67 (3d Cir. 2002); *United States v. Bertoli*, 40 F.3d 1384, 1389-96 (3d Cir. 1994). If no contemporaneous objections were made to an issue raised on appeal, then the challenged issue is reviewed for plain error. *United States v. Olano*, 507 U.S. 725, 732, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993); FED. R. CRIM P. 52(b) (1995).

## IV. ANALYSIS

### A. Admission of Smith's Statement

Lake argues that the admission of Detective Brooks' testimony regarding Smith's statement violated the Confrontation Clause and the Supreme Court's holding in *Bruton v. United States*, 391 U.S. 123, 126, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968).

██ The Confrontation Clause of the Sixth Amendment guarantees criminal defendants the right to confront and to cross-examine adverse witnesses.[3] Consistent with that right, the Supreme Court has held that the admission of a codefendant's statement at trial violates the defendant's Sixth Amendment right to confrontation if: (1) the statement incriminates the defendant, and (2) the codefendant chooses not to testify. *Bruton v. United States*, 391 U.S. 123, 126, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968).

The rule articulated in *Bruton* applies when a witness testifies about a codefendant's out-of-court statement. *See Monachelli v. Warden*, 884 F.2d 749, 753 (3d Cir. 1987). A defendant's rights under the Confrontation Clause are violated when a witness testifies regarding a statement by a non-testifying codefendant that directly implicates the defendant in criminal activity. *See Bruton*, 391 U.S. at 124 n.1 (finding that a witness' trial testimony regarding a codefendant's out-of-court confession that he and the defendant had committed armed robbery was "powerfully incriminating").

██ However, there is no violation of the Confrontation Clause if the statement is redacted to omit any references to the existence of someone

---

[3]    The Confrontation Clause of the Sixth Amendment is made applicable to the Virgin Islands by Section 3 of the Revised Organic Act. 48 U.S.C. § 1561 (1984); *see also Gov't of the V.I. v. King*, 25 V.I. 114 (Terr. Ct. 1990).

Both the Sixth Amendment and 48 U.S.C. § 1561 provide, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. CONST. amend. VI; 48 U.S.C. § 1561.

the jury would know to be the defendant. *Richardson v. Marsh*, 481 U.S. 200, 211, 107 S. Ct. 1702, 95 L. Ed. 2d 176 (1987). Simply substituting the defendant's name with a symbol or a neutral phrase is insufficient to render the confession admissible if the statement nonetheless implicates the defendant. *Gray v. Maryland.*, 523 U.S. 185, 192, 118 S. Ct. 1151, 140 L. Ed. 2d 294 (1998); *see also United States v. Richards*, 241 F.3d 335, 341, 43 V.I. 337 (3d Cir. 2001) (holding that the Confrontation Clause was violated by the admission of a confession redacted so that a blank space was substituted for the defendant's name and the officer who read the confession said "deleted" or "deletion" instead of the defendant's name).

■ Here, Detective Brooks' testimony about Smith's statement was redacted before trial to omit Lake's name and nickname. In the statement, Smith indicated that he picked up "a little dread," which could reasonably be interpreted as a reference to the Dread. But the Dread was not a defendant in this case. The "dude" who got in the car clearly refers to Burton. (Trial Tr. 275-77, Dec. 8, 2004.) Smith stated that he drove "the two men" to his apartment in Bovoni, opened the door, let them in, then got back into his car and waited outside. After approximately fifteen minutes, the Dread came left the apartment and drove away with Smith. The identity of the third man (other than the Dread or Smith) is unclear from the statement. However, the statement suggests that he did not leave the apartment with the Dread, nor did he drive away in Smith's vehicle. Viewed in conjunction with Burton's own testimony about being tied up and left in the apartment, the statement indicates that Burton was the third man. As read at trial, the statement contained no direct or indirect references to Lake. Moreover, Smith's statement was not facially incriminating, nor did it directly implicate any defendant in the crimes charged.

Accordingly, the admission of Smith's statement did not violate the Confrontation Clause or the principles outlined in *Bruton v. United States*, 391 U.S. at 126. *See, e.g., Priester v. Vaughn,* 382 F.3d 394 (3d Cir. 2004) (holding that the admission of the redacted statement of a non-testifying codefendant did not violate the Confrontation Clause, notwithstanding references to "the other guy" or "another guy" in same car, since there were no blank spaces or nicknames that might have directly implicated defendant, and any inference that the defendant was "other guy" was not a foregone conclusion); *see also Mason v. Yarborough,* 447 F.3d 693,

695-96 (9th Cir. 2006) (holding the admission of an accomplice's statement that was not incriminating on its face did not run afoul of the Confrontation Clause); *United States v. Sutton*, 337 F.3d 792, 799-800 (7th Cir. 2003) (holding that there was no violation of the Confrontation Clause by the admission of testimony regarding the codefendant's confession because it was properly redacted using neutral pronouns not implicating the defendant); *United States v. Williamson*, 339 F.3d 1295, 1303 (11th Cir. 2003) (holding that the Confrontation Clause was not violated because the statement did not implicate the defendants, but became incriminating only when additional independent evidence was presented).

## B. Production of Burton's Cellular Phone Records

Lake also claims that the Government violated Rule 16 by failing to provide him with Burton's cellular phone records. Lake argues that such violation impaired his ability to evaluate Burton's credibility as a witness in the trial.

Pursuant to Rule 16, upon the defendant's request, the government must disclose and make available for inspection a defendant's written statements or a recording of his oral statements if such statements are: (1) relevant, (2) within the possession, custody, or control of the government, and (3) known to exist, or could be known to exist with due diligence by the prosecutor. *See* FED. R. CRIM. P. 16(a)(1)(B)(i). Additionally, upon a defendant's request, Rule 16 requires the government to produce and allow the defendant to inspect and copy "books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items" that are: (1) within the government's possession, custody, or control; or (2) material to preparing the defense. FED. R. CRIM. P. 16(a)(1)(E) (2002).

In support of his claim, Lake refers to the non-disclosure of cellular phone logs of calls that occurred prior and subsequent to the events in question. The record below reveals that on July 20, 2004, Lake filed a motion to compel the government produce Burton's cellular phone records for August 8-9, 2003. Lake's motion failed to specify Burton's phone number. On October 15, 2004, the government filed a notice of production of the cellular phone records for the number 514-2004. The notice, however, did not indicate whether that cellular phone number belonged to Burton.

On November 30, 2004, Lake filed a motion *in limine* to admit the original tape recording of a call made from Burton's cellular phone on November 19, 2004. According to Lake's motion, the November 19, 2004, call involved Burton requesting that Lake pay him $10,000 not to testify at trial. On December 2, 2004, the government filed a motion *in limine* to admit tape recordings of certain cellular phone conversations in which Craig Richardson ("Richardson"), on behalf of Lake, allegedly offered to pay Burton $5,000 not to testify at trial. The calls referred to in government's motion were made on November 16-19, 2004.

On December 3, 2004, during a pretrial conference, the Superior Court ordered the government to produce a tape and a transcript by December 6, 2004. However, the record does not reveal what specific tapes and transcripts were ordered to be produced. During a pre-trial hearing on December 8, 2004, Lake's attorney told the trial judge that she had received the transcribed version of the tapes, but would not be using them.

■ The facts show that Lake's trial counsel received at least some of Burton's cellular phone records. Lake has not pointed to any particular record that was requested but not received. After reviewing the record, the Court finds there is insufficient evidence to find a Rule 16 violation. *See, e.g., United States v. Deaner*, 1 F.3d 192, 199-200 (3d Cir. 1993) (finding that the defendant failed to show any Rule 16 violation); *see also* V.I. R. APP. P. 22 (providing that an appellant's brief must include "a designation by reference to specific pages in the appendix or place in the proceedings at which each issue on appeal was raised, [or] objected to . . . .").

## C. Juror Bias

Lake argues that the Superior Court abused its discretion when it interviewed Jurors R, and H, individually, in chambers, on the morning of December 8, 2004. Lake also contends that it was an abuse of discretion trial court to allow Jurors R and H to continue to serve on the jury instead of declaring a mistrial.

■ The Sixth Amendment provides criminal defendants with the right to a trial by an impartial jury. U.S. CONST. Amend. VI. The trial judge's findings regarding juror impartiality are entitled to great deference. *See United States v. Hodge*, 321 F.3d 429, 440-42 (3d Cir. 2003). Unapproved private communication, contact, or tampering with a juror is presumptively prejudicial. *See Remmer v. United States*, 347 U.S. 227,

229, 74 S. Ct. 450, 98 L. Ed. 654 (1954). However, a mistrial is not constitutionally mandated "every time a juror has been placed in a potentially compromising situation". *Smith v. Phillips*, 455 U.S. 209, 217, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982). Rather, the trial court should investigate those jurors who have been exposed to extraneous influences to determine whether there has been a prejudicial impact. *See Hodge*, 321 F.3d at 442.

■ The purpose for interviewing Juror's R and H was to inquire into their possible relationships with Lake's mother, who worked at the Virgin Islands Legislature. The trial court determined that such questioning was necessary after learning that Jurors R and H had some employment-related connection with the Legislature. The jurors were questioned in the judge's chambers, out of the view of the other jurors and the gallery. Moreover, the questioning was very brief, and was limited to whether the jurors knew Lake's mother and the effect, if any, of that relationship on the jurors' impartiality. Neither the decision to *voire dire* Jurors R and H, nor the manner in which the interview was conducted was an abuse of discretion. *See United States v. Console*, 13 F.3d 641, 667 (3d Cir. 1993) (stating that individual *voir dire* the "method of inquiry [that] we have preferred"); *cf. United States v. Resko*, 3 F.3d 684, 686 (3d Cir. 1993) (holding that district court's use of a questionnaire, instead of an individualized *voir dire,* was "inadequate to enable the court to fulfill its responsibility of providing an appropriate cautionary instruction and of determining whether prejudice resulted from the jury misconduct").

Furthermore, because the trial court allowed Jurors R and H to continue serving on the jury only after confirming that both jurors could remain fair and impartial, it was not an abuse of discretion to allow them to stay on the jury. *See, e.g., Hodge*, 321 F.3d at 442 (affirming the trial judge's finding that a juror was unbiased was entitled to great deference even though one juror told another that the defendant had a bad reputation and had once stabbed someone); *United States v. Vega*, 285 F.3d 256, 266-67 (3d Cir. 2002) (holding that there was no prejudice despite the juror's concern about a spectator staring at him because the juror stated that he could continue to be fair and impartial and the court banned the spectator from the courtroom).

## V. CONCLUSION

For the reasons explained above, the Court will affirm Lake's conviction. An appropriate Judgment follows.